# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEROME FRASIER, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>FINANCIAL BUSINESS AND CONSUMER SOLUTIONS, INC.,<br><br>          Defendant. | Case No.<br><br>**COMPLAINT – CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jerome Frasier ("Plaintiff") individually and on behalf of all others similarly situated, by and through his undersigned counsel, brings this Class Action Complaint against Financial Business and Consumers, Inc. ("FBCS"). Plaintiff alleges the following upon information and belief based on and the investigation of counsel, except as to those allegations that specifically pertain to Plaintiff, which are alleged upon personal knowledge.

## INTRODUCTION

1.  Plaintiff and the proposed Class Members bring this class action lawsuit on behalf of all persons who entrusted FBCS with sensitive personally identifiable information ("PII")[1] that was subsequently exposed in a data breach, which FBCS publicly disclosed on April 26, 2024 (the "Data Breach" or the "Breach").

2.  Plaintiff's claims arise from Defendant's failure to properly secure and safeguard PII that was entrusted to it, and its accompanying responsibility to store and transfer that information. At least 1,955,385 million consumers' information were affected by the Data Breach,

---

[1] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual.

in which sensitive personal information, including names, Social Security numbers, dates of birth, and account information, was accessed by an unauthorized third party.[2]

3.    FBCS is a debt collection agency based out of Hatboro, Pennsylvania, that provides consumers pre-charge off, early out, and third-party collection services across a variety of industries, including consumer credit, healthcare, commercial recovery, auto loans & leases, student loans, and utilities.[3]

4.    Defendant had numerous statutory, regulatory, contractual, and common law duties and obligations, including those based on their affirmative representations to Plaintiff and the Class, to keep their PII confidential, safe, secure, and protected from unauthorized disclosure or access.

5.    On or around February 26, 2024, FBCS detected unauthorized activity within its IT network.[4] FBCS began notifying its corporate clients of the Data Breach on April 4, 2024,[5] and on April 26, 2024, FBCS filed a notice of data breach with the Attorney General of Maine and began sending out notice letters to anyone who was affected by Data Breach.[6]

6.    Plaintiff's claims arise from Defendant's failure to safeguard PII provided by, and belonging to, its customers and failure to provide timely notice of the Data Breach.

7.    Defendant failed to take precautions designed to keep its customers' PII secure.

8.    Defendant owed Plaintiff and Class Members a duty to take all reasonable and necessary measures to keep the PII it collected safe and secure from unauthorized access.

---

[2] *Id.*
[3] *About Us*, FBCS CONSUMER CONTACT SOLUTIONS, https://www.fbcs-inc.com/about-fbcs-collection-agency/ (last visited May 15, 2024).
[4] *Data Breach Notifications: Financial Business and Consumer Solutions, Inc,* OFFICE OF THE MAINE ATTORNEY GENERAL (April 26, 2024) https://apps.web.maine.gov/online/aeviewer/ME/40/5fe1ede5-aafd-4da2-b1a4-0057a6cdadc6.shtml (last visited May 15, 2024.
[5] *Id.*
[6] *Id.*

Defendant solicited, collected, used, and derived a benefit from the PII, yet breached its duty by failing to implement or maintain adequate security practices.

9.    Defendant admits that information in its system was accessed by unauthorized individuals, though it provided little information regarding how the Data Breach occurred.

10.    The sensitive nature of the data exposed through the Data Breach signifies that Plaintiff and Class Members have suffered irreparable harm.  Plaintiff and Class Members have lost the ability to control their private information and are subject to an increased risk of identity theft.

11.    Defendant, despite having the financial wherewithal and personnel necessary to prevent the Data Breach, nevertheless failed to use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it maintained for Plaintiff and Class Members, causing the exposure of PII for Plaintiff and Class Members.

12.    As a result of the Defendant's inadequate digital security and notice process, Plaintiff and Class Members' PII was exposed to criminals. Plaintiff and the Class have suffered and will continue to suffer injuries including: financial losses caused by misuse of PII; the loss or diminished value of their PII as a result of the Data Breach; lost time associated with detecting and preventing identity theft; and theft of personal and financial information.

13.    Plaintiff brings this action on behalf of all persons whose PII was compromised as a result of Defendant's failure to: (i) adequately protect the PII of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; (iii) effectively secure hardware containing protected PII using reasonable and adequate security procedures free of vulnerabilities and incidents; and (iv) timely notify Plaintiff and Class Members

of the Data Breach. Defendant's conduct amounts to at least negligence and violates federal and state statutes.

14.    Plaintiff brings this action individually and on behalf of a Nationwide Class of similarly situated individuals against Defendant for: negligence; negligence per se; unjust enrichment, breach of implied contract, and breach of implied covenant of good faith and fair dealing, invasion of confidence, and breach of fiduciary duty.

15.    Plaintiff seeks to remedy these harms and prevent any future data compromise on behalf of himself and all similarly situated persons whose personal data was compromised and stolen as a result of the Data Breach and who remain at risk due to Defendant's inadequate data security practices.

## PARTIES

*Plaintiff*

16.    Plaintiff Jerome Frasier is a citizen of Pennsylvania and resides in Philadelphia. Plaintiff received a notice letter from FBCS dated April 26, 2024, informing him that his information was compromised in the Data Breach. As a consequence of the Data Breach, Plaintiff has been forced to, and will continue to, invest significant time monitoring his accounts to detect and reduce the consequences of likely identity fraud. As a result of the Data Breach, Plaintiff is now subject to substantial and imminent risk of future harm. Plaintiff Frasier would not have used FBCS' services had he known that it would expose his sensitive PII.

*Defendant*

17.    Defendant Financial Business and Consumer Solutions, Inc. is a Pennsylvania corporation with its principal place of business located at 330 S. Warminster Road, Suite 353, Hatboro, Pennsylvania 19040.

4

18.    Defendant is a debt collection agency, founded in 1982, and is based out of Hatboro, Pennsylvania. Defendant provides consumers pre-charge off, early out, and third-party collection services across a variety of industries, including consumer credit, healthcare, commercial recovery, auto loans & leases, student loans, and utilities.[7] Defendant maintains satellite offices in Cape May, New Jersey and Tampa, Florida.[8]

## JURISDICTION AND VENUE

19.    This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. At least one member of the Class defined below is a citizen of a different state than Defendant, and there are more than 100 putative Class Members.

20.    This Court has personal jurisdiction over Defendant because Defendant is registered to do business and maintains their principal place of business in Hatboro, Pennsylvania.

21.    Venue is proper in these District under 28 U.S.C. § 1391(b)(2) because Defendant is headquartered in this District, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

### A.  Background on Defendant

22.    FBCS is a debt collection agency based out of Hatboro, Pennsylvania, that provides consumers pre-charge off, early out, and third-party collection services across a variety of industries, including consumer credit, healthcare, commercial recovery, auto loans & leases, student loans, and utilities.[9]

---

[7] *About Us*, FBCS CONSUMER CONTACT SOLUTIONS, https://www.fbcs-inc.com/about-fbcs-collection-agency/ (last visited May 15, 2024).
[8] *Id.*
[9] *Id.*

23.    In the ordinary course of its business practices, Defendant stores, maintains, and uses an individuals' PII, which includes Plaintiff and Class Members, including but not limited to information such as: full names; addresses; Social Security numbers; and account numbers.

24.    Upon information and belief, Defendant made promises and representations to its customers, including Plaintiff and Class Members, that the PII collected from them as a condition of obtaining a loan would be kept safe, confidential, that the privacy of that information would be maintained, and that Defendant would delete any sensitive information after it was no longer required to maintain it.

25.    Plaintiff and Class Members provided their PII to Defendant with the reasonable expectation and on the mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

26.    As a result of collecting and storing the PII of Plaintiff and Class Members for its own financial benefit, Defendant had a continuous duty to adopt and employ reasonable measures to protect Plaintiff and the Class Members' PII from disclosure to third parties.

**B.  The Data Breach**

27.    On or around February 26, 2024, Defendant became aware of a cybersecurity incident affecting its company's systems.[10] This investigation revealed that the FBCS network was subject to unauthorized access between February 14, 2024, and February 26, 2024, during which the unauthorized party was able to view and/or access confidential consumer information.[11] FBCS determined the Data Breach compromised consumers names, Social Security

---

[10] *Collection Agency FBCS Says Data Breach Exposed Nearly 2 million People*, April 29, 2024, *available at:* https://www.securityweek.com/2-million-impacted-by-data-breach-at-debt-collector-fbcs/ (last visited May 15, 2024).

[11] *Financial Business and Consumer Solutions (FBCS) Data Breach Impacted 2M Individuals*, April 29, 2024, *available at:* https://securityaffairs.com/162514/cyber-crime/fbcs-data-breach.html (last visited May 15, 2024).

numbers, dates of birth, and account numbers.[12]

28.    FBCS began notifying its corporate clients of the Data Breach on April 4, 2024, and on April 26, 2024, FBCS filed a notice of Data Breach with the Attorney General of Maine and began sending out notice letters to impacted consumers.[13]

29.    While Defendant sought to minimize the damage caused by the Data Breach, it cannot and has not denied that there was unauthorized access to the sensitive personal information of Plaintiff and Class Members.

30.    Individuals affected by the Data Breach are, and remain, at risk that their data will be sold or listed on the dark web and, ultimately, illegally used in the future.

**C. Defendant's Failure to Prevent, Identify and Timely Report the Data Breach**

31.    Defendant admits that unauthorized third persons accessed its network systems in order to obtain sensitive information about its current and former customers.

32.    Defendant failed to take adequate measures to protect its computer systems against unauthorized access.

33.    Defendant was not only aware of the importance of protecting the PII that it maintains, as alleged, it promoted its capability to do so, as evident from its  Privacy Policy.[14] In its Privacy Policy, FBCS includes the following representations:

> At FBCS, Inc., we are committed to maintaining your privacy and delivering a website that provides you with quality, timely information about our organization. Please read our website privacy policy below to understand how information collected through our website is used and disclosed.

---

[12] *Id.*

[13] *Data Breach Notifications: Financial Business and Consumer Solutions, Inc,* OFFICE OF THE MAINE ATTORNEY GENERAL (April 26, 2024, Exhibit 1) https://apps.web.maine.gov/online/aeviewer/ME/40/5fe1ede5-aafd-4da2-b1a4-0057a6cdadc6/8e30c591-6126-4644-a9eb-5a9f1f9ee2f7/document.html (last visited May 16, 2024).

[14] See *Privacy Policy, FBCS CONSUMER CONTACT SOLUTIONS,* https://www.fbcs-inc.com/privacy-policy/ (Last visited May 15, 2024).

> FBCS, Inc. takes your privacy and security very seriously and has put significant privacy and security protections in place for our consumers, clients, and employees. These protections are designed utilizing industry privacy and security best practices to ensure your personal information is protected.
>
> FBCS, Inc. is committed to maintaining the privacy of your personal information collected through this website, https://fbcs-inc.com or www.myfbcs.com.

34.     The PII that Defendant allowed to be exposed in the Data Breach is the type of private information that Defendant knew or should have known would be the target of cyberattacks.

35.     Despite its own knowledge of the inherent risks of cyberattacks, and notwithstanding the FTC's data security principles and practices,[15] Defendant failed to disclose that its systems and security practices were inadequate to reasonably safeguard its past and present customers' sensitive personal information.

36.     The FTC directs businesses to use an intrusion detection system to expose a breach as soon as it occurs, monitor activity for attempted hacks, and have an immediate response plan if a breach occurs.[16] Immediate notification of a Data Breach is critical so that those impacted can take measures to protects themselves.

37.     Despite this guidance, Defendant delayed the notification of the Data Breach. Based on FBCS' filing with the Office of the Maine Attorney General, the Data Breach is believed to have occurred on or around February 14, 2024, through February 26, 2024[17], yet, by its

---

[15] *Protecting Personal Information: A Guide for Business*, FEDERAL TRADE COMMISSION (Oct. 2016), https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last visited May 15, 2024).

[16] *Id.*

[17] *Data Breach Notifications: Financial Business and Consumer Solutions, Inc,* OFFICE OF THE MAINE ATTORNEY GENERAL (April 26, 2024, Exhibit 1) https://apps.web.maine.gov/online/aeviewer/ME/40/5fe1ede5-aafd-4da2-b1a4-0057a6cdadc6/8e30c591-6126-4644-a9eb-5a9f1f9ee2f7/document.html (last visited May 16, 2024).

admission, Defendant did not begin informing impacted consumers until two months later, on April 26, 2024.[18]

**D. The Harm Caused by the Data Breach Now and Going Forward**

38.    Victims of data breaches are susceptible to becoming victims of identity theft.

39.    The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority," 17 C.F.R. § 248.201(9), and when "identity thieves have your personal information, they can drain your bank account, run up charges on your credit cards, open new utility accounts, or get medical treatment on your health insurance."[19]

40.    The type of data that was accessed and compromised here – such as, full names and Social Security numbers – can be used to perpetrate fraud and identity theft.  Social Security numbers are widely regarded as the most sensitive information hackers can access.  Social Security numbers and dates of birth together constitute high risk data.

41.    Plaintiff and Class members face a substantial risk of identity theft given that their Social Security numbers, addresses, dates of birth, and other important PII were compromised in the Data Breach.  Once a Social Security number is stolen, it can be used to identify victims and target them in fraudulent schemes and identity theft.

42.    Stolen PII is often trafficked on the "dark web," a heavily encrypted part of the Internet that is not accessible via traditional search engines. Law enforcement has difficulty policing the "dark web" due to this encryption, which allows users and criminals to conceal their identities and online activity.

---

[18] *Id.*

[19] *Prevention and Preparedness*, NEW YORK STATE POLICE, https://troopers.ny.gov/prevention-and-preparedness (last visited May 15, 2024).

43.    When malicious actors infiltrate companies and copy and exfiltrate the PII that those companies store, the stolen information often ends up on the dark web because the malicious actors buy and sell that information for profit.[20]

44.    For example, when the U.S. Department of Justice announced their seizure of AlphaBay in 2017, AlphaBay had more than 350,000 listings, many of which concerned stolen or fraudulent documents that could be used to assume another person's identity. Other marketplaces, similar to the now-defunct AlphaBay, "are awash with [PII] belonging to victims from countries all over the world. One of the key challenges of protecting PII online is their pervasiveness. As data breaches in the news continue to reveal, PII about employees, customers and the public are housed in all kinds of organizations, and the increasing digital transformation of today's businesses only broadens the number of potential sources for hackers to target."[21]

45.    PII remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[22] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[23]

46.    A compromised or stolen Social Security number cannot be addressed as simply as a stolen credit card. An individual cannot obtain a new Social Security number without significant work. Preventive action to defend against the possibility of misuse of a Social Security number is

---

[20] *Shining a Light on the Dark Web with Identity Monitoring*, IDENTITYFORCE (Dec. 28, 2020) https://www.identityforce.com/blog/shining-light-dark-web-identity-monitoring (last visited May 15, 2024).
[21] *Stolen PII & Ramifications: Identity Theft and Fraud on the Dark Web*, ARMOR (April 3, 2018) https://res.armor.com/resources/blog/stolen-pii-ramifications-identity-theft-fraud-dark-web/ (last visited May 15, 2024).
[22] *Id.*
[23] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), available at: https://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft (last visited May 15, 2024).

not permitted; rather, an individual must show evidence of actual, ongoing fraud activity to obtain a new number. Even then, however, obtaining a new Social Security number may not suffice. According to Julie Ferguson of the Identity Theft Resource Center, "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[24]

47.     The PII compromised in the Data Breach demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained: "[c]ompared to credit card information, personally identifiable information and Social Security numbers are worth more than 10 times on the black market."[25]

48.     According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses in 2019, resulting in more than $3.5 billion in losses to individuals and business victims.[26]

49.     Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good."[27] Defendant did not rapidly report to Plaintiff and Class Members that their PII had been stolen.

50.     As a result of the Data Breach, the PII of Plaintiff and Class Members have been exposed to criminals for misuse. The injuries suffered by Plaintiff and Class Members, or likely be suffered thereby as a direct result of Defendant's Data Breach, include: (a) theft of their PII; (b) costs associated with the detection and prevention of identity theft; (c) costs associated with time

---

[24] *Id.*
[25] *Experts advise compliance not same as security*, RELIAS MEDIA (Mar. 1, 2015) https://www.reliasmedia.com/articles/134827-experts-advise-compliance-not-same-as-security (Last visited May 15, 2024).
[26] *2019 Internet Crime Report Released*, FBI, https://www.fbi.gov/news/stories/2019-internet-crime-report-released-021120#:~:text=IC3%20received%20467%2C361%20complaints%20in,%2Ddelivery%20scams%2C%20and%20extortion. (Last visited May 15, 2024).
[27] *Id.*

spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the consequences of this breach; (d) invasion of privacy; (e) the emotional distress, stress, nuisance, and annoyance of responding to, and resulting from, the Data Breach; (f) the actual and/or imminent injury arising from actual and/or potential fraud and identity theft resulting from their personal data being placed in the hands of the ill-intentioned hackers and/or criminals; (g) damage to and diminution in value of their personal data entrusted to Defendant with the mutual understanding that Defendant would safeguard their PII against theft and not allow access to and misuse of their personal data by any unauthorized third party; and (h) the continued risk to their PII, which remains in the possession of Defendant, and which is subject to further injurious breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff and Class Members' PII.

51.     In addition to a remedy for economic harm, Plaintiff and Class Members maintain an interest in ensuring that their PII is secure, remains secure, and is not subject to further misappropriation and theft.

52.     Defendant disregarded the rights of Plaintiff and Class Members by (a) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that its network servers were protected against unauthorized intrusions; (b) failing to disclose that it did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiff's and Class Members' PII; (c) failing to take standard and reasonably available steps to prevent the Data Breach; (d) concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (e) failing to provide Plaintiff and Class Members prompt and accurate notice of the Data Breach.

53.    The actual and adverse effects to Plaintiff and Class Members, including the imminent, immediate, and continuing increased risk of harm for identity theft, identity fraud and/or medical fraud directly and/or proximately caused by Defendant's wrongful actions and/or inaction and the resulting Data Breach require Plaintiff and Class Members to take affirmative acts to recover their peace of mind and personal security including, without limitation, purchasing credit reporting services, purchasing credit monitoring and/or internet monitoring services, frequently obtaining, purchasing and reviewing credit reports, bank statements, and other similar information, instituting and/or removing credit freezes and/or closing or modifying financial accounts, for which there is a financial and temporal cost. Plaintiff and other Class Members have suffered, and will continue to suffer, such damages for the foreseeable future.

## CLASS ALLEGATIONS

54.    Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of the following Nationwide Class:

> All persons in the United States whose personal information was compromised in the Data Breach publicly announced by Defendant in April of 2024 (the "Class").

55.    Plaintiff also seeks certification of a Pennsylvania Subclass, defined as follows:

> All Pennsylvania residents whose personal information was compromised in the Data Breach publicly announced by Defendant in April of 2024 (the "Pennsylvania Subclass").

56.    Specifically excluded from the Class are Defendant, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or its officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

57.    Plaintiff reserves the right to amend the Class definitions above if further investigation and/or discovery reveals that the Class should be expanded, narrowed, divided into

subclasses, or otherwise modified in any way.

58.    This action may be certified as a class action under Federal Rule of Civil Procedure 23 because it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements therein.

59.    <u>Numerosity (Rule 23(a)(1))</u>: The Class is so numerous that joinder of all Class Members is impracticable. Although the precise number of such persons is unknown, and the facts are presently within the sole knowledge of Defendant, Plaintiff estimates that the Class is comprised of nearly two million Class Members. The Class is sufficiently numerous to warrant certification.

60.    <u>Typicality of Claims (Rule 23(a)(3))</u>: Plaintiff's claims are typical of those of other Class Members because, Plaintiff, like the Class Members, had his PII compromised as a result of the Data Breach.  Plaintiff is a member of the Class, and his claims are typical of the claims of the members of the Class. The harm suffered by Plaintiff is similar to that suffered by all other Class Members that was caused by the same misconduct by Defendant.

61.    <u>Adequacy of Representation (Rule 23(a)(4))</u>: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interests antagonistic to, nor in conflict with, the Class. Plaintiff has retained competent counsel who are experienced in consumer and commercial class action litigation and who will prosecute this action vigorously.

62.    <u>Superiority (Rule 23(b)(3))</u>: A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Because the monetary damages suffered by individual Class Members is relatively small, the expense and burden of individual litigation make it impossible for individual Class Members to seek redress for the wrongful conduct asserted herein.  If Class treatment of these claims is not available, Defendant will likely continue

its wrongful conduct, will unjustly retain improperly obtained revenues, or will otherwise escape liability for its wrongdoing as asserted herein.

63.   <u>Predominant Common Questions (Rule 23(a)(2))</u>: The claims of all Class Members present common questions of law or fact, which predominate over any questions affecting only individual Class Members, including:

   a.   Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

   b.   Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

   c.   Whether Defendant's storage of Class Member's PII was done in a negligent manner;

   d.   Whether Defendant had a duty to protect and safeguard Plaintiff and Class Members' PII;

   e.   Whether Defendant's conduct was negligent;

   f.   Whether Defendant's conduct violated Plaintiff and Class Members' privacy;

   g.   Whether Defendant's conduct violated the statutes as set forth herein;

   h.   Whether Defendant took sufficient steps to secure its customers' PII;

   i.   Whether Defendant was unjustly enriched;

   j.   The nature of relief, including damages and equitable relief, to which Plaintiff and Class Members are entitled.

64.   Information concerning Defendant's policies is available from Defendant's records.

65.   Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

66.   The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications and establish incompatible standards of conduct for Defendant. Prosecution as a class action will eliminate the possibility of repetitious and

inefficient litigation.

67.     Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

68.     Given that Defendant had not indicated any changes to their conduct or security measures, monetary damages are insufficient and there is no complete and adequate remedy at law.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
### (On Behalf of Plaintiff and All Class Members)

69.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 15 and paragraphs 22 through 53 as though fully set forth herein.

70.     Plaintiff brings this claim individually and on behalf of the Class Members.

71.     Defendant knowingly collected, came into possession of, and maintained Plaintiff and Class Members' PII, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

72.     Defendant had a duty to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiff and Class Members' PII.

73.     Defendant had, and continues to have, a duty to timely disclose that Plaintiff and Class Members' PII within its possession was compromised and precisely the types of information that were compromised.

74.     Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards, applicable standards of care from statutory authority

16

like Section 5 of the FTC Act, and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected its customers' PII.

75.     Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and its customers.  Defendant was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

76.     Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential PII.

77.     Defendant breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' PII.

78.     The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

    a.  Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII;

    b.  Failing to adequately monitor the security of its networks and systems; and

    c.  Failing to periodically ensure that its computer systems and networks had plans in place to maintain reasonable data security safeguards.

79.     Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' PII within Defendant's possession.

80.     Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiff's and Class Members' PII.

17

81.    Defendant, through its actions and/or omissions, unlawfully breached its duty to timely disclose to Plaintiff and Class Members that the PII within Defendant's possession might have been compromised and precisely the type of information compromised.

82.    Defendant breached the duties set forth in 15 U.S.C. § 45, the FTC guidelines, the NIST's Framework for Improving Critical Infrastructure Cybersecurity, and other industry guidelines. In violation of 15 U.S.C. § 45, Defendant failed to implement proper data security procedures to adequately and reasonably protect Plaintiff's and Class Member's PII. In violation of the FTC guidelines, *inter alia,* Defendant did not protect the personal customer information it keeps; failed to properly dispose of personal information that was no longer needed; failed to encrypt information stored on computer networks; lacked the requisite understanding of its networks' vulnerabilities; and failed to implement policies to correct security issues.

83.    Defendant's failure to comply with applicable laws and regulations constitutes negligence per se.

84.    It was foreseeable that Defendant's failure to use reasonable measures to protect Plaintiff's and Class Members' PII would result in injury to Plaintiff and Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches.

85.    It was foreseeable that the failure to adequately safeguard Plaintiff's and Class Members' PII would result in injuries to Plaintiff and Class Members.

86.    Defendant's breach of duties owed to Plaintiff and Class Members caused Plaintiff and Class Members' PII to be compromised.

87.    But for Defendant's negligent conduct and breach of the above-described duties owed to Plaintiff and Class Members, their PII would not have been compromised.

88.     As a result of Defendant's failure to timely notify Plaintiff and Class Members that their PII had been compromised, Plaintiff and Class Members are unable to take the necessary precautions to mitigate damages by preventing future fraud.

89.     As a result of Defendant's negligence and breach of duties, Plaintiff and Class Members are in danger of imminent harm in that their PII, which is still in the possession of third parties, will be used for fraudulent purposes, and Plaintiff and Class Members have and will suffer damages including: a substantial increase in the likelihood of identity theft; the compromise, publication, and theft of their personal information; loss of time and costs associated with the prevention, detection, and recovery from unauthorized use of their personal information; the continued risk to their personal information; future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the personal information compromised as a result of the Data Breach; and overpayment for the services or products that were received without adequate data security.

**COUNT II**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiff and All Class Members)**

90.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 15 and paragraphs 22 through 53 as though fully set forth herein.

91.     Plaintiff and Class Members conferred a benefit upon Defendant by using Defendant's services.

92.     Defendant appreciated or had knowledge of the benefits conferred upon itself by Plaintiff. Defendant also benefited from the receipt of Plaintiff's PII, as this was used for Defendant to administer its services to Plaintiff and the Class.

93.     Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and the Class Members' services and their PII because Defendant failed to adequately protect their PII. Plaintiff and the proposed Class would not have provided their PII to Defendant or utilized their services had they known Defendant would not adequately protect their PII.

94.     Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and the Class all unlawful or inequitable proceeds received by it because of its misconduct and Data Breach.

**COUNT III**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and All Class Members)**

95.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 15 and paragraphs 22 through 53 as though fully set forth herein.

96.     Plaintiff and the Class provided and entrusted their PII to Defendant. Plaintiff and the Class provided their PII to Defendant as part of Defendant's regular business practices.

97.     In so doing, Plaintiff and the Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached and compromised or stolen, in return for the business services provided by Defendant. Implied in these exchanges was a promise by Defendant to ensure that the PII of Plaintiff and Class Members in its possession was secure.

98.     Pursuant to these implied contracts, Plaintiff and Class Members provided Defendant with their PII in order for Defendant to provide services, for which Defendant is compensated. In exchange, Defendant agreed to, among other things, and Plaintiff and the Class

20

understood that Defendant would: (1) provide services to Plaintiff and Class Members; (2) take reasonable measures to protect the security and confidentiality of Plaintiff's and Class Members' PII; and (3) protect Plaintiff's and Class Members' PII in compliance with federal and state laws and regulations and industry standards.

99.     Implied in these exchanges was a promise by Defendant to ensure the PII of Plaintiff and Class Members in its possession was only used to provide the agreed-upon reasons, and that Defendant would take adequate measures to protect Plaintiff and Class Members' PII.

100.    A material term of this contract is a covenant by Defendant that it would take reasonable efforts to safeguard that information. Defendant breached this covenant by allowing Plaintiff and Class Members' PII to be accessed in the Data Breach.

101.    Indeed, implicit in the agreement between Defendant and its customers was the obligation that both parties would maintain information confidentially and securely.

102.    These exchanges constituted an agreement and meeting of the minds between the parties: Plaintiff and Class Members would provide their PII in exchange for services by Defendant. These agreements were made by Plaintiff and Class Members as Defendant's customers.

103.    When the parties entered into an agreement, mutual assent occurred. Plaintiff and Class Members would not have disclosed their PII to Defendant but for the prospect of utilizing Defendant's services. Conversely, Defendant presumably would not have taken Plaintiff's and Class Members' PII if it did not intend to provide Plaintiff and Class Members with its services.

104.    Defendant was therefore required to reasonably safeguard and protect the PII of Plaintiff and Class Members from unauthorized disclosure and/or use.

105.    Plaintiff and Class Members accepted Defendant's offer of services and fully performed their obligations under the implied contract with Defendant by providing their PII, directly or indirectly, to Defendant, among other obligations.

106.    Plaintiff and Class Members would not have entrusted their PII to Defendant in the absence of their implied contracts with Defendant and would have instead retained the opportunity to control their PII.

107.    Defendant breached the implied contracts with Plaintiff and Class Members by failing to reasonably safeguard and protect Plaintiff's and Class Members' PII.

108.    Defendant's failure to implement adequate measures to protect the PII of Plaintiff and Class Members violated the purpose of the agreement between the parties.

109.    Instead of spending adequate financial resources to safeguard Plaintiff and Class Members' PII, which Plaintiff and Class Members were required to provide to Defendant, Defendant instead used that money for other purposes, thereby breaching their implied contracts it had with Plaintiff and Class Members.

110.    As a proximate and direct result of Defendant's breaches of their implied contracts with Plaintiff and Class Members, Plaintiff and the Class Members suffered damages as described in detail above.

**COUNT IV**
**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(On behalf of Plaintiff and All Class Members)**

111.   Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 15 and paragraphs 22 through 53 as though fully set forth herein.

112.   Defendant has violated the covenant of good faith and fair dealing by its conduct alleged herein.

113.   Every contract in this state has an implied covenant of good faith and fair dealing. This implied covenant is an independent duty and may be breached even when there is no breach of a contract's actual and/or express terms.

114.   Plaintiff and Class Members have complied with and performed all, or substantially all, of the obligations imposed on their conditions of services with Defendant.

115.   Defendant breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices to safeguard its customers PII, failing to timely and accurately disclose the Data Breach to Plaintiff and Class Members and continued acceptance of PII and storage of other personal information after Defendant knew, or should have known, of the security vulnerabilities of the systems that were exploited in the Data Breach.

116.   Defendant acted in bad faith and/or with malicious motive in denying Plaintiff and Class Members the full benefit of their bargains as originally intended by the parties, thereby causing them substantial injury in an amount to be determined at trial.

**COUNT V**
**INVASION OF CONFIDENCE**
**(On Behalf of Plaintiff and All Class Members)**

117.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 15 and paragraphs 22 through 53 as though fully set forth herein.

118.    At all times during Plaintiff's and the Class's interactions with Defendant, Defendant was fully aware of the confidential and sensitive nature of Plaintiff's and the Class's PII that Plaintiff and the Class entrusted to Defendant.

119.    As alleged herein and above, Defendant's relationship with Plaintiff and the Class was governed by terms and expectations that Plaintiff's and the Class's PII would be collected, stored, and protected in confidence, and would not be disclosed to unauthorized third parties.

120.    Plaintiff and the Class entrusted Defendant with their PII with the explicit and implicit understandings that Defendant would protect and not permit the PII to be disseminated to any unauthorized third parties.

121.    Plaintiff and the Class also entrusted Defendant with their PII the explicit and implicit understandings that Defendant would take precautions to protect that PII from unauthorized disclosure.

122.    Defendant voluntarily received in confidence Plaintiff's and the Class's PII with the understanding that PII would not be disclosed or disseminated to the public or any unauthorized third parties.

123.    As a result of Defendant's failure to prevent and avoid the Data Breach from occurring, Plaintiff's and the Class's PII was disclosed and misappropriated to unauthorized third parties beyond Plaintiff's and the Class's confidence, and without their express permission.

124.    As a direct and proximate cause of Defendant's actions and/or omissions, Plaintiff and the Class have suffered damages.

125.    But for Defendant's disclosure of Plaintiff's and the Class's PII in violation of the parties' understanding of confidence, their PII would not have been compromised, stolen, viewed, accessed, and used by unauthorized third parties. Defendant's Data Breach was the direct and legal cause of the theft of Plaintiff's and the Class's PII as well as the resulting damages.

126.    The injury and harm Plaintiff and the Class suffered was the reasonably foreseeable result of Defendant's unauthorized disclosure of Plaintiff's and the Class's PII. Defendant knew or should have known its methods of accepting and securing Plaintiff's and the Class's PII was inadequate as it relates to, at the very least, securing servers and other equipment containing Plaintiff's and the Class's PII.

127.    As a direct and proximate result of Defendant's breach of its confidence with Plaintiff and the Class, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) identity theft; (ii) the loss of the opportunity how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual present and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII of current and former

128.    customers; and(viii) present and future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

129.    As a direct and proximate result of Defendant's breaches of confidence, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

### COUNT VI
### BREACH OF FIDUCIARY DUTY
#### (On behalf of Plaintiff and All Class Members)

130.    Plaintiff incorporates by reference and re-alleges every allegation set forth above in paragraphs 1 through 15 and paragraphs 22 through 53 as if fully set forth herein.

131.    Defendant entered into a special relationship with Plaintiff and Class Members, whereby Defendant became a fiduciary of Plaintiff's and Class Members' PII.

132.    Defendant has a duty to (i) safeguard Plaintiff's and Class Members' PII, (ii) to timely notify Plaintiff and Class Members of a data breach and disclosure, and (iii) maintain complete and accurate records of what information Defendant has and continues to store.

133.    Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class Members, namely to keep their PII secure.

134.    Defendant breached its fiduciary duties to Plaintiff and Class Members as a result of its failure to adequately maintain and secure Plaintiff and Class Members PII and failure to provide Plaintiff and Class Members timely notice of the Data Breach.

135.    As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiff and Class Members have suffered and will continue to suffer injury, including but not

limited to: (i) actual identity theft, (ii) the compromise, publication, and/or theft of their PII, (iii) costs associated with monitoring potential unauthorized use of their PII, (iv) the continued risk to their PII, (vi) future costs that will be expended as result of the Data Breach, and (vii) the diminished value of Defendant's services they received.

136.     As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

(a)     For an order determining that this action is properly brought as a class action and certifying Plaintiff as the representatives of the Class and his counsel as Class Counsel;

(b)     For an order declaring the Defendant's conduct violates the laws referenced herein;

(c)     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d)     For damages in amounts to be determined by the Court and/or jury;

(e)     An award of statutory damages or penalties to the extent available;

(f)     For pre-judgment interest on all amounts awarded;

(g)     For an order of restitution and all other forms of monetary relief; and

(h)     Such other and further relief as the Court deems necessary and appropriate.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

Dated: May 17, 2024     Respectfully submitted,

          **PRIBANIC & PRIBANIC**

          By: *<u>/s/ Vincent A. Coppola</u>*
          Vincent A. Coppola
          513 Court Place
          Pittsburgh, PA 15219
          Telephone: (412) 281-8844
          Fax: (412) 281-4740
          Email: vcoppola@pribanic.com

          Mark S. Reich*
          Courtney E. Maccarone*
          Gary I. Ishimoto*
          **LEVI & KORSINSKY, LLP**
          33 Whitehall Street, 17th Floor
          New York, NY 10004
          Telephone: (212) 363-7500
          Facsimile: (212) 363-7171
          Email: mreich@zlk.com
          Email: cmaccarone@zlk.com
          Email: gishimoto@zlk.com

          **pro hac vice* forthcoming

          *Counsel for Plaintiff*